Erin Rose Ronstadt, SBN 028362
Clayton Richards, SBN 029054
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
clayton@ronstadtlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leah Whitten, a single woman, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| USAA Comprehensive Welfare Benefits Plan, Number 519, an ERISA benefit plan; Lincoln Life Assurance Company of Boston, a plan fiduciary; USAA's Executive Vice President, People Services, a plan administrator; and United Services Automobile Association, a plan sponsor, | |
| Defendants. | |

For her claims against Defendants USAA Comprehensive Welfare Benefits Plan, Number 519 (the "Plan"), Lincoln Life Assurance Company of Boston ("Lincoln"), USAA's Executive Vice President of People Services ("Plan Administrator"), and United Services Automobile Association ("USAA") (collectively "Defendants"), Plaintiff Leah Whitten ("Whitten") alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.      This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

3. Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

4. Whitten is and was at all relevant times a resident of Maricopa County, Arizona.

5. USAA, the Plan, and the Plan Administrator have their principal place of business in the State of Texas.

6. Lincoln has its principal place of business in the State of Pennsylvania.

7. Defendants are licensed and authorized to do business in Maricopa County, Arizona, and/or reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

8. Whitten has satisfied all of the jurisdictional prerequisites to filing this lawsuit, and her claims are timely before this Court.

## **PARTIES**

9. All other paragraphs and headings are incorporated by reference.

10. The Plan is a purported ERISA benefit plan established and maintained by USAA for coordinating and administering welfare benefits for its eligible employees.

11. The Plan is a welfare benefit plan that offers group short-term disability ("STD") benefits and long-term disability ("LTD") benefits. The Plan is comprised of "Constituent Benefits Programs." As two of these Constituent Benefits Programs, USAA established and maintains the USAA Short-Term Disability Benefit Plan (the "STD Program") and USAA Employee Benefit Association Group Long-Term Disability Plan (the "LTD Program") to help ease the financial impact a long-term illness or injury can have on an employee's life.

12. USAA provides benefits under the LTD Program according to an insurance policy issued and fully insured by Lincoln, identified as Policy No. GF3-891-419734-01 (the "Policy").

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

-2-

13.     The STD Program is self-insured by USAA's general assets, and STD claims are administered by Lincoln.

14.     USAA administered the Plan in Arizona to its employees, including Whitten.

15.     USAA is the Plan Sponsor and Employer.

16.     The Plan Administrator is the "administrator" and the "named fiduciary" with respect to the general administration of the Plan.

17.     The Plan Administrator may appoint other Plan Administrators. In the absence of an appointment, the Executive Vice President of People Services, or Human Resources, shall be the Plan Administrator.

18.     The Plan Administrator has the power to delegate authority, to appoint Third Party Administrators ("TPAs"), and to grant or deny benefits under the Plan and Constituent Benefits Programs.

19.     On information and belief, Lincoln administered claims for USAA under the Plan as a TPA or as the Plan Administrator.

20.     Whitten was an Eligible Employee, Participant, and beneficiary entitled to LTD benefits under the Plan.

21.     USAA or the Plan Administrator exercised and reserved authority to make final decisions regarding the administration and payment of disability benefits for the Plan. Lincoln acted as USAA's agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Whitten is informed and believes that USAA and Lincoln are either a "named fiduciary" of the Plan pursuant to 29 USC § 1133(2); or a "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); or a "designated fiduciary" pursuant to 29 USC § 1105(c)(1)(B).

22.     Lincoln had actual or apparent authority to act as a fiduciary on behalf of the Plan.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

-3-

23.     Lincoln's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

24.     On information and belief, USAA has not properly conferred Lincoln with the discretionary authority to interpret the Plan or to make eligibility determinations regarding the Plan.

25.     Lincoln acted under a structural conflict of interest in both administering and paying LTD claims under the Plan.

26.     Whitten is entitled to *de novo* review of her claims.

## GENERAL ALLEGATIONS

27.     All previous paragraphs are incorporated by reference.

28.     USAA provided certain USAA employees with STD and LTD insurance pursuant to the Plan and other documents comprising the Plan.

29.     Whitten worked as a Life and Health Underwriter at USAA from April 10, 2006 through January 4, 2018 on a full-time sustained basis.

30.     Whitten remained a covered individual under the Plan eligible for LTD benefits during her employment.

31.     Whitten received annual performance reviews from USAA.

32.     Whitten received numerous awards and recognitions for her exceptional work performance.

### The Plan Language

33.     Under the Policy, Disability means: "if the Covered Person is eligible for the 24 Month Own Occupation benefit, 'Disability' or 'Disabled' means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." (citations in original).

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ  85014
(602) 615-0050

34.     Under the LTD Program, Whitten is disabled, as a result of an injury or sickness, if she is unable to perform the Material and Substantial Duties of her Own Occupation during the Elimination Period and the next 24 months of Disability; (2) thereafter she must be unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation; or (3) is Partially Disabled.

35.     Partial Disability means, as a result of the Injury or Sickness, Whitten is able to perform: (1) one or more, but not all, of the Material and Substantial Duties of her own or any other occupation on an Active Employment or part-time basis; or (2) all of the Material and Substantial Duties of her own or any other occupation on a part-time basis; and (3) earning between 20% and 80% of her Basic Monthly Earnings.

36.     "Own Occupation," with respect to LTD, "means the Covered Person's occupation that [s]he was performing when [her] Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy."

37.     "Material and Substantial Duties" means "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

38.     "Any Occupation" means "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, **physical and mental capacity.**" (emphasis added).

39.     Under the LTD Policy, benefits for a "Mental Illness" are limited to 24 months. "Mental Illness" is defined as "a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of Mental Illness."

40.     Whitten is unable to definitively ascertain the appropriate definition of Disability or the correct Plan provisions because the Plan documents have conflicting information or are missing language.

-5-

*Whitten's Disability Claim*

41.     Whitten suffers from multiple medical conditions, including depression, anxiety, tension headaches, intractable migraine headaches, temporomandibular joint disorder ("TMJ"), left hip pain, lower back pain with occasional left leg pain, left foot pain, history of anemia, multi-nodular thyroid goiter, fatigue, atypical chest pain, irritable bowel syndrome ("IBS"), gastroparesis, gastric pain, esophageal spasm, nausea, vomiting, and constipation.

42.     Secondary to her medical conditions, Ms. Whitten applied for and received short-term disability ("STD") benefits through the maximum benefit period. Thereafter, Ms. Whitten applied for and received LTD benefits effective July 25, 2018.

43.     Between the period of January 2018 through April 2019 while receiving either STD or LTD benefits, Whitten made several unsuccessful attempts to return to work; however, her medical conditions precluded her from sustaining any significant work activity.

44.     Whitten's first date of absence from work was January 5, 2018. This is also her date of Disability.

45.     Whitten's last date of work was in April 2019.

46.     Whitten submitted medical records and complied with all of Lincoln's requests for the consideration of her STD and LTD claims.

47.     Lincoln initially approved Whitten's LTD claim based on Mental Illness, which was arbitrary and an abuse of discretion in light of Whitten's many physical conditions.

48.     When Lincoln realized that Whitten would not be returning to work on a full-time basis and could not sustain work, they initiated a systematic plan to terminate benefits. This included video surveillance, social media and internet searches, and multiple medical file reviews.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

49.     On or around January 15, 2019, Lincoln referred Whitten's claim to its "Special Investigations Unit," or "SIU". Lincoln hired a third-party vendor, ISG, to conduct a social media and background search.

50.     Nothing uncovered in ISG's Investigation was contrary to Ms. Whitten's restrictions and limitations and reported activity.

51.     At the direction of Lincoln, ISG surveilled Whitten over the course of three days, Saturday, February 9, 2019 through Monday, February 11, 2019. ISG observed minimal activity on Saturday and Sunday and no activity on Monday. The three-day surveillance video is a total of 16 minutes, of which less than half depicts activity. Nothing observed in the surveillance was contradictory to Ms. Whitten's reported activities of daily living.

52.     Being surveilled was an incredibly frightening experience for Whitten. She realized she was being followed and called the police. She was fearful for her life due to a history of being stalked and abused.

53.     In addition to the improper and harassing surveillance, Lincoln conducted excessive medical file reviews that were internally inconsistent and constitute a misrepresentation of the evidence.

54.     Lincoln ignored Whitten's treating providers' recommendations and the medical evidence to justify its decision to deny LTD benefits. It knew that there were unresolved questions and that Whitten had ongoing symptoms at the time of its 2019 Denial.

55.     On information and belief, Lincoln knew that, if Whitten's disability benefits were denied, she would lose health benefits and be unable to continue treatment.

56.     Lincoln terminated Whitten's benefits on May 2, 2019 effective April 1, 2019. (the "2019 Denial").

57.     On October 29, 2019, Whitten timely appealed the 2019 Denial (the "2019 Appeal"), submitting evidence that supported her inability to work from her Own

-7-

Occupation or Any Occupation and addressing in detail Lincoln's biased claims handling. Whitten also submitted medical evidence that she was Disabled from physical conditions independent of a 'Mental Illness.'

58.      Lincoln reversed its 2019 Denial and reinstated Whitten's benefits in a letter dated December 27, 2019. Lincoln approved the claim under the 'Mental Illness' limitation. However, Lincoln acknowledged its obligation to evaluate the claim for ongoing benefits based on a physical condition: "[i]f her condition no longer meets the criteria of the above limitation but remains disabling as supported by medical documentation, the claim will be evaluated for continued benefits beyond this [Mental Illness] limitation."

59.      On April 28, 2020, Lincoln sent a letter stating that, "Ms. Whitten was previously notified that the condition that disables her is subject to [the Mental Illness] contractual limitation. Ms. Whitten's benefits began on July 4, 2018; thus, she will reach the 24-month benefit period on July 23, 2020 and no further benefits will be due."

60.      Instead, Lincoln's December 27, 2019 letter approved Ms. Whitten's long-term disability ("LTD") benefits and asserted that, "[i]f her condition no longer meets the criteria of the [Mental Illness] limitation **but remains disabling as supported by medical documentation, the claim will be evaluated for continued benefits beyond this limitation.**" (emphasis added).

61.      Neither the December 27, 2019 nor April 28, 2020 letters provided Whitten with appeal rights, despite constituting as adverse benefit determinations.

62.      Lincoln did not investigate the claim for eligibility outside of the 'Mental Illness' limitation.

63.      Whitten is informed and believes Lincoln never intended to pay the claim beyond 24 months and set aside reserves consistent with a plan to terminate no matter what after 24 months.

64. On May 11, 2020, Whitten requested that Lincoln comply with ERISA and provide a proper adverse benefit determination, as well as provide a disclosure of all relevant documents.

65. In a June 25, 2020 letter, Lincoln pivoted by disagreeing with Whitten's "interpretation of the scope of Lincoln's disclosure obligations under ERISA" but by stating, for the first time, "the claim will be evaluated for continued benefits beyond this limitation."

66. Lincoln conducted a paltry review, in part by requesting medical records.

67. Lincoln did not adequately review the medical evidence or seek additional information it would need to fairly evaluate Whitten's claim beyond the 24-month Mental Illness limitation.

68. In two separate letters dated July 29, 2020, Lincoln closed Whitten's claim effective August 1, 2020 (collectively the "2020 Denials").

69. In reaching the 2020 Denials, Lincoln found that Whitten was not disabled from "Any Occupation" due to "chronic headaches" and subjected her to the 'Mental Illness' limitation, just as it had always intended to do since the inception of the claim.

70. Lincoln rushed to deny Whitten's LTD claim. Lincoln improperly – and without authorization – directly contacted Whitten's treating provider, Dr. Hooley, without the involvement or knowledge of Plaintiff's counsel. Lincoln contacted Dr. Hooley over the course of July 21-22, 2020. When Dr. Hooley's office explained they would only answer questions provided in writing, Lincoln then faxed questions to Dr. Hooley on July 22, 2020, continuing to conceal its efforts from Whitten's legal counsel. Lincoln then denied the claim on July 29, 2020, less than one week after its surreptitious treating provider solicitation, without receiving a reply from Dr. Hooley. Again, Lincoln never provided Plaintiff with an opportunity to facilitate Dr. Hooley's response before issuing the 2020 Denials.

71. Lincoln failed to consider all of Whitten's medical conditions and, by parsing out Whitten's conditions into two separate denials, quite literally demonstrated a failure to

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

-9-

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

properly apply the Plan language and consider Whitten as a whole person. Lincoln was required to evaluate her ability to perform Any Occupation based on her "training, education, experience, age, **physical and mental capacity."** (emphasis added). It intentionally avoided its obligation by dissecting her claim and cherry picking for the medical conditions it wanted to address.

72.     In reaching its 2020 Denials, Lincoln improperly disregarded the medical evidence, Whitten's treating provider assessments, and even its own prior findings of Disability. Instead, Lincoln relied almost exclusively on an inadequate and erroneous medical file review by Dr. Jeffery Grimes.

73.     In his July 24, 2020 report, Dr. Grimes opines that, "[f]rom the records provided, the claimant has the functional capacity to work 8 hours per day, for 5 days per week for 40 hours per week ***with adequate migraine treatment and possible accommodation if required***." (emphasis added.)

74.     As noted by Whitten's treating providers, Drs. Vehra, Tharalson, Knighton, and Hooley, her migraines are "severe," "chronic," and "intractable," despite adequate treatment.

75.     Further, the Plan requires that Whitten be able to perform the Material and Substantial Duties of Any Occupation with reasonable continuity. By definition, this precludes special accommodations.

76.     In reaching his conclusion, Dr. Grimes failed to properly assess the available medical evidence, did not have all current medical evidence, did not properly consider Whitten's treating provider assessments, and failed to consider the effects of the COVID-19 pandemic on Whitten's ability to seek treatment.

77.     Dr. Grimes opined that, "[t]he treatment provided is not consistent with the standard of care, for the apparent level of severity of her medical conditions from the records provided." This is false. The records shows that Whitten has tried and exhausted multiple treatment modalities for her various medical conditions. She has followed her

-10-

treating providers' advice and recommendations. Whitten is compliant with her medication and treatment within her financial means.

78.     Dr. Grimes notes that there are no current neurology medical records confirming treatment. However, Lincoln failed to obtain Whitten's most recent neurology records. In her September 17, 2019 office visit with Dr. Vehra, Whitten noted worsening of her migraines in severity and frequency.

79.     Dr. Grimes has not physically examined or even spoken with Whitten. His opinion is based solely on a review of the medical records.

80.     Whitten timely appealed Lincoln's 2020 Denials on January 25, 2021, which included supplemental evidence in support of her Disability (the "Final Appeal").

81.     On March 17, 2021, Whitten informed Lincoln that she was awarded Social Security Disability Insurance ("SSDI") benefits and provided the February 12, 2021 SSDI Notice of Award to Lincoln.

82.     In a letter dated March 22, 2021, Lincoln issued its final adverse benefit determination (the "Final Denial").

83.     Lincoln did not timely issue the Final Denial.

84.     Lincoln was required to make a determination on Whitten's Appeal within 45 days, or by March 11, 2021.

85.     In the Final Denial, Lincoln concluded that Whitten had reached the maximum benefit period of 24 months under the Mental Illness limitation.

86.     Lincoln further purports that Whitten does not meet the Any Occupation definition of Disability under the LTD Policy.

87.     The Final Denial notes that Drs. Charles Brock, Koruon Daldalyan, and Sarah Ghebrendrias conducted medical file reviews on the Final Appeal.

88.     In violation of ERISA regulations, Lincoln failed to provide Whitten an opportunity to respond to Drs. Brock, Daldalyan, and Ghebrendrias medical file reviews prior to issuing the Final Denial.

-11-

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ  85014
(602) 615-0050

89.     Drs. Brock, Daldalyan, and Ghebrendrias conducted inadequate reviews.

90.     Lincoln's review of the file was arbitrary, contrary to the record, and unsupported by the medical evidence.

91.     Lincoln conducted excessive medical file reviews that were internally inconsistent and constitute a misrepresentation of the evidence.

92.     None of the medical file reviewers have physically examined or even spoken with Whitten. Their opinions are based solely on a review of the medical records – and a poor one at that.

93.     In its Denial, Lincoln failed to explain why it credited its medical file reviewers over Whitten's treating providers and unreasonably relied on those opinions when it knew or should have known that they conducted inadequate and biased reviews.

94.     Lincoln failed to consider Whitten's treating provider assessments. This includes the September 20, 2019 *Headache Residual Functional Capacity Questionnaire* completed by Dr. Eugene Tharalson and the October 11, 2019 letter from Dr. Ronald Hooley—both supportive of Whitten's LTD claim.

95.     Given their expertise, longstanding treatment, and physical examinations of Whitten, her treating providers are best situated to evaluate her restrictions and limitations. Lincoln has no reasonable basis to ignore this evidence.

96.     Lincoln failed to consider Whitten's medical evidence, which demonstrates new and worsening medical conditions in support of her LTD claim.

97.     Lincoln failed to properly consider Whitten's SSDI award of benefits or adequately explain why it disregarded the SSDI determination.

98.     Under the Social Security Act, disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…" that is of "such severity that [the claimant]… cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives." *See* 42 U.S.C. §423(d)(1)(A), (2)(A).

99.     Because the Social Security Administration concluded Whitten is unable to perform "all work," it stands to reason that, if Whitten qualifies for SSDI benefits, then she should also qualify for LTD benefits under the Any Occupation definition of Disability. At the very least, Lincoln should give substantial weight to Whitten's SSDI award.

100.     Given the proximity in time to Lincoln's Final Appeal review, Whitten's SSDI award is relevant evidence that must be given substantial weight. The SSA issued a the fully favorable determination almost contemporaneously with Lincoln's Final Appeal review. It stands to reason that the SSA reviewed nearly all the same medical evidence as Lincoln.

101.     The Plan requires Whitten to apply for SSDI benefits in order to avoid estimation of those benefits. Because Lincoln required Whitten to apply for SSDI benefits, it is estopped from denying her LTD benefits on the basis of the same conditions which she was approved by the SSA.

102.     In a letter dated April 21, 2021, Lincoln requested repayment of the SSDI overpayment.

103.     Lincoln's request for the SSDI overpayment was improper.

104.     Lincoln does not have a right to recover funds from Whitten's SSDI benefits.

105.     Under ERISA, Lincoln is only entitled to equitable remedies to recoup its purported overpayment (*i.e.,* from future LTD benefits).

106.     Lincoln has committed several procedural violations and has deprived Whitten of a full and fair review throughout the entire claims process.

107.     Whitten exhausted her administrative remedies under the Plan and timely brings this lawsuit.

### COUNT I
### (Recovery of Plan Benefits)
### (All Defendants)

108.     All previous paragraphs are incorporated by reference.

109.    The Plan is an Employee Welfare Benefit Plan as defined by ERISA. Defendants are the Plan, Plan administrators or Plan fiduciaries of the Plan under ERISA.

110.    The Plan represents LTD coverage and a promise to provide LTD benefits until Whitten is no longer disabled under the terms of the Plan.

111.    Whitten became disabled in 2018 and continues to be disabled under the Plan. She is unable to perform the Material and Substantial duties of Any Occupation.  She has claimed the benefits under the Plan to which she is entitled.

112.    Whitten's medical conditions never improved and, in fact, have worsened since leaving work.

113.    Whitten had to forego medical treatment because of the 2019 and 2020 terminations and denials of her LTD benefits.

114.    Whitten reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 65 or until she was no longer Disabled. [KB1]

115.    Lincoln's determination that Whitten was not entitled to benefits was influenced by an improper conflict of interest.

116.    Lincoln improperly inserted terms into the Plan that substantially altered the definition of Disability under which Whitten is entitled to benefits.

117.    Lincoln improperly failed to consider the opinions of Whitten's treating and examining physicians, Whitten's credibility, whether reported activity is consistent with the symptoms and limitations, whether Whitten has responded to and cooperated in her treatment, and whether the symptoms reported are anatomically implausible.

118.    Lincoln improperly failed to consider the side effects of Whitten's medications in determining whether she is totally disabled under the Plan.

119.    Lincoln denied Whitten a full and fair review, in part by failing to initiate and complete a full and fair review of her LTD claim and by failing to provide Whitten with all of the evidence it relied on in denying LTD benefits.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

-14-

120.    Lincoln engaged in improper contact with Whitten's treating providers and did not provide her with an opportunity to facilitate information as required under ERISA.

121.    The Plan is required, as part of the appeal process, to establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination under a full and fair review. 29 C.F.R. § 2560.503-1(h)(1).

122.    Whitten was not given any meaningful instruction on how to perfect her claim, nor was she told what additional information would help Lincoln in its decision-making. Lincoln wrongfully denied Whitten' disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

123.    Whenever Whitten requested her claim file, Lincoln failed to provide her with relevant documents as required under ERISA. In doing so, Plaintiff is informed and believes Lincoln adhered to outdated ERISA requirements and withheld relevant documents.

124.    Lincoln acted arbitrarily and capriciously when it selectively reviewed Whitten' medical records, relying only on those portions of her medical records that supported a denial of benefits.

125.    Lincoln's procedural irregularities include but are not limited to: all correspondence between Lincoln and the independent medical examiners, peer reviewers, and medical reviewers/consultants; improperly delegating duties to third parties; failing to apply the proper definition of Disability; behaving as an adversary bent on denying the claim; impermissibly "cherry picking" only evidence favorable to Lincoln from Whitten' claim file; failing to describe the evidence that Whitten would need to provide to Lincoln in order to substantiate her disability; implementing unfair and inconsistent claims procedures; and failing to act in Whitten' best interests.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

-15-

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

126.   Lincoln failed to investigate Whitten's claim adequately, including its failure to conduct an in-person medical evaluation, which would have been beneficial to a full and fair review of Whitten's claim.

127.   On information and belief, the peer reviewers were financially incentivized to deny Whitten's claim and acted with bias.

128.   Lincoln unreasonably selected and used reviewing physicians who were without appropriate knowledge, training, and experience to assess Whitten's disabling conditions.

129.   Lincoln unreasonably failed to ensure that peer reviewers and its NCMs provided unbiased assessments for purposes of its claims administration.

130.   Plaintiff is informed and believes Lincoln and its employees who handled Whitten's LTD claim have a history of bias against claimants and are financially incentivized to deny claims under the Plan.

131.   Lincoln failed to maintain accurate and reliable internal log notes. Whitten is informed and believes that the claim file is missing important information and has been altered by Lincoln prior to its disclosure to Whitten.

132.   The peer reviewers and NCMs arbitrarily reached their opinions based on insufficient evidence or investigation.

133.   Lincoln's physician reviewers and/or NCMs did not reasonably communicate with Whitten's treating physicians. And when they did attempt to contact treating physicians, they never let Whitten know that. Instead, Lincoln denied Whitten's claim without adequate information.

134.   None of Lincoln's reviewing physicians and/or NCMs ever set forth any substantive reasons why Whitten's doctors' opinions that she could not work were incorrect.

135.   Lincoln failed to explain why it credited the physician reviewers over Whitten's treating physicians.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

136.   The peer reviewers were not given the Plan or other important records for reaching its decision that Whitten could perform sedentary work.

137.   The peer reviewers never spoke to Whitten, and they never conducted an in-person evaluation of her.

138.   In accordance to 29 C.F.R. § 2560.503-1(g)(4)(i), prior to issuing its Final Denial, Lincoln failed to provide Whitten with "any new or additional evidence [or rationale] considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) in connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided …to give the claimant a reasonable opportunity to respond prior to that date." This includes the medical file reviews conducted by Drs. Brock, Daldalyan, and Ghebrendrias.

139.   In accordance with 29 C.F.R. § 2560.503-1(g)(1)(vii)(A)(iii), Lincoln failed to include an adequate discussion of the Final Denial, including an explanation of the basis for disagreeing with the disability determination made by the SSA.

140.   Instead of properly considering the fully favorable SSDI determination and acting like a fiduciary, Lincoln focused on recouping the purported SSDI overpayment.

141.   Lincoln does not have a right to recover funds from Whitten's SSDI benefits. The United States Supreme Court explained in *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 416 (1973) that 42 U.S.C. § 407(a) bars any claims against SSDI benefits. In *Philpott,* the Supreme Court also held that 42 U.S.C. § 407(a) protects SSDI benefits from creditors even when commingled with other assets.

142.   ERISA limits Lincoln's remedies to the LTD Plan terms and to equitable remedies. With respect to the purported overpayment of LTD benefits, the only remedy available to Lincoln is to recover the overpayment from future benefits, which Lincoln terminated in its Final Denial.

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

143.    The United States Supreme Court issued a decision that precludes insurance companies, under ERISA, from pursuing claims for reimbursement of overpaid disability benefits unless the insurer can specifically identify a particular fund in the insured's possession. *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan,* 136 S. Ct. 651, 656-58 (2016); and *Bilyeu v. Morgan Stanley Long Term Dis. Plan,* 683 F.3d 183, 1093-94 (9th Cir. 2012). ERISA limits insurers to *equitable* remedies. Insurers cannot seek recovery from a participant's general assets because that is a *legal* remedy. Insurers have no legal remedies under ERISA. *Montanile* is clear; no form of equitable relief is available if the insured is no longer in possession of the disability payments.

144.    Lincoln cannot "collect" the overpayment unless it can specifically identify its benefit payments in the participant's account – not an amount equal to the benefit payments; the actual benefit payments. Because Whitten spent the LTD benefits for living expenses and is no longer in possession of the LTD benefits, Lincoln has no equitable remedy. *Montanile* and *Bilyeu* preclude Lincoln from seeking any legal or equitable remedy. To that end, Lincoln has no claim for an overpayment.

145.    In accordance with 29 C.F.R. § 2560.503-1(g)(1)(vii)(A)(i), Lincoln failed to include an adequate discussion of the Final Denial, including an explanation of the basis for disagreeing with the views presented by Ms. Whitten to the plan of health care professionals treating Ms. Whitten and vocational professionals who evaluated her.

146.    In accordance with 29 C.F.R. § 2560.503-1(l)(2), "if the Plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such

circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary."

147.   Lincoln intentionally and in bad faith withheld relevant information in violation of ERISA, such as internal guidelines and other information Whitten requested on appeal. It failed to apprise her of her appeal rights throughout the claim, such as in December 2019 and thereafter when it issued an adverse benefit determination without appeal rights.

148.   Lincoln handled Whitten's claim in an adversarial manner and failed to administer the Plan prudently.

149.   Despite the coverage of Whitten's disability, Defendants have improperly denied LTD benefits to Whitten in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence and was clearly erroneous.

150.   Whitten has exhausted her administrative remedies.

151.   On information and belief, Lincoln did not set aside proper reserves for paying claims under the Plan and did not use appropriate actuarial standards and/or reliable risk factors for calculating reserves on claims under the Plan.

152.   Defendants are not entitled to an arbitrary and capricious standard of review of their decision in this action, so Whitten' claims are entitled to *de novo* review with a bench trial on the record. Lincoln's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Whitten to *de novo* review.

153.   Lincoln asserts that, "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding."

154.   Although the LTD Policy states Lincoln has discretion with respect to determining eligibility and to interpret the Plan, under ERISA, that can only be true if the

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050

Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

155.    The Plan and LTD coverage are subject to the insurance laws of the State of Texas and therefore Lincoln has no discretionary authority.

156.    Even if USSA properly delegated discretionary authority to Lincoln, and Texas did not ban discretionary authority to Lincoln, in light of Lincoln's wholesale and flagrant procedural violations of ERISA, Whitten should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

157.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Whitten is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.  Whitten is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

158.    On information and belief, Whitten may be entitled to additional benefits from USAA as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits. Whitten is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

159.    Whitten relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan. She further relied on Lincoln's

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ  85014
(602) 615-0050

representations that, if she participated in additional appeals, Lincoln would act in good faith and in her best interests.

160. Defendants consciously, unreasonably, intentionally and without justification breached their fiduciary duties to Whitten with respect to their administration of the Plan by violating ERISA regulations and the Plan in its failure to provide a full and fair review.

161. Defendants and Lincoln failed to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Therefore, Lincoln breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a) and all other ERISA regulations.

162. Pursuant to 29 U.S.C. § 1132(g), Whitten is entitled to recover her attorneys' fees and costs incurred herein from Defendants.

163. Whitten is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

164. WHEREFORE, Whitten asks for entry of judgment against Defendants as follows:

A. For all past and future LTD benefits under the terms of the Plan;

B. For an award of Whitten's attorneys' fees and costs incurred herein;

C. For an award of prejudgment interest on benefits and other equitable relief at the highest legal rate until paid; and

D. For such and further relief as the Court deems just and reasonable.

-21-

1    Dated this 27th day of April 2021.

2                              RONSTADT LAW, P.L.L.C.

3

4                              By: s/ Erin Ronstadt
                                   Erin Ronstadt
5                                  Clayton Richards
                                   Attorneys for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RONSTADT LAW, P.L.L.C.
6122 North 7th Street, Ste. B
Phoenix, AZ 85014
(602) 615-0050